UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RUHI REIMER, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NY & CO ECOMM LLC d/b/a NEW YORK & COMPANY,<br><br>    Defendant. | Case No. 1:23-cv-00740-TSE-WEF |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## INTRODUCTION

On July 11, 2023, Plaintiff filed a First Amended Class Action Complaint ("FAC") against Defendant seeking redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code §59.1-510 *et seq*. [Dkt. 6]. Plaintiff's claims arise from Defendant's unlawful telemarketing practices. On August 9, 2023, Defendant was served with Plaintiff's FAC. [Dkt. 13]. Service was effectuated on Charlotte Miller, Defendant's managing agent, at Defendant's registered agent's address in Dover, Delaware. *See* attached Exhibit A, Declaration of Mohammed O. Badwan. Defendant's responsive pleading was due on or before August 30, 2023. [Dkt. 13]. Despite being duly served with the FAC, Defendant has failed to appear or otherwise respond to the FAC. On September 1, 2023, Plaintiff filed a Request for Entry of Clerk's Default against Defendant pursuant to Fed. R. Civ. P. 55(a). [Dkt. 15]. On September 15, 2023, the Clerk entered a default against Defendant for its failure to plead or otherwise defense this action. [Dkt. 18]. For the reasons

1

set forth herein, Plaintiff is entitled to a default judgment against Defendant in the amount of $480,000.

## LEGAL STANDARD

"Under Federal Rule 55, a party must take two steps when seeking to obtain a default judgment: entry of default by the clerk and a subsequent motion for default judgment." *Royal v. Lee,* 2018 U.S. Dist. LEXIS 236831, at *1 (E.D. Va. 2018). "First, the clerk of court files an entry of default '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'" *Priest v. Dbi Services, LLC,* 2022 U.S. Dist. LEXIS 167167, at *5-6 (E.D. Va. 2022). "Second, following the clerk's entry, a party may move for a default judgment under Federal Rule 55(b)(1)—which permits the clerk to enter default judgment under certain circumstances—or Federal Rule 55(b)(2), which permits the court to enter default judgment in all other situations." *Id.* at *6.

"In considering whether to enter default judgment, a court recognizes that, by its default, a defendant has conceded the factual allegations in the complaint." *Wilcox v. Transmodal Sols., LLC,* 473 Supp. 3d 574, 573 (E.D Va. 2020) *citing Ryan v. Homecomings Fin. Network,* 253 F.3d 788, 780 (4th Cir. 2001). "However, default does not constitute an admission of the plaintiff's conclusions of law, and is not to be 'treated as an absolute confession by the defendant of . . . liability and of the plaintiff's right to recover.'" *Id.* "Instead, the court must 'determine whether the well-pleaded allegations in [the movant's] complaint support the relief sought in [the] action.'" *Id.* "In performing that task, the [c]ourt will examine the essential elements of [the] [p]laintiff's claims and determine whether [the] [p]laintiff has pled facts sufficient to satisfy those elements." *Id.* at 582.

I.      **The Court Has Jurisdiction Over Plaintiff's Claims**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the TCPA is a federal statute. The Court has supplemental jurisdiction over the VTPPA claims pursuant to §28 U.S.C. §1367(a). Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district. *See* Exhibit B, Declaration of Ruhi Reimer, ¶3.

II.     **Defendant Was Properly Served**

Defendant was properly served as a summons and the FAC were served by a process server on Charlotte Miller, Defendant's managing agent, at Defendant's registered agent's address in Dover, Delaware. [Dkt. 13]. *See* Fed. R. Civ. P. 4(h).

III.    **Plaintiff is Entitled to a Default Judgment on his TCPA Claims**

    a.      **Plaintiff is Entitled to $12,500 in Statutory Damages for Defendant's Violations of 47 CFR 64.1200(c)(2)**

Pursuant to 47 C.F.R. §64.1200(c)(2) (a regulation based on 47 U.S.C. §227(c)), it is a violation of the TCPA to call "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. This regulation also applies to wireless telephone subscribers who have registered their numbers on the national do-no-call registry." *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 U.S. Dist. LEXIS 177166, at *30-31 (N.D. Cal. 2013).

The Federal Communications Commission ("FCC") has made it clear that consumers have the right to revoke consent after it was initially provided.[1] The FCC has held that consumers may

---

[1] Congress delegated authority to the FCC to prescribe regulations to interpret and implement the requirements of the TCPA. *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010); *see also* 47 U.S.C. §227(b)(2).

3

revoke consent by "using any reasonable method including orally or in writing." *Id.* at 7997. The FCC further summed up its ruling on this issue by stating, "[w]e clarify that a called party may revoke consent at ***any time*** and through ***any reasonable means***. ***A caller may not limit the manner in which revocation may occur.***" *Id.* at 7989-90 (emphasis added)

Here, Plaintiff revoked consent to be called by Defendant on three separate occasions by sending letters to addresses designated by Defendant on its website as addresses for consumers to revoke consent. *See* Exhibit B, ¶¶12-13; ¶¶16-17; ¶¶19-20. There could be no question that sending letters to Defendant's *designated* addresses is a reasonable mean/manner for Plaintiff to revoke his consent. In other words, Defendant should not be able to benefit for its failure to properly collect mail at the addresses it explicitly designated as the addresses where revocations of consent should be sent to. Here, Plaintiff followed Defendant's precise instructions for revocations of consent and therefore the means/manner of his revocations must be deemed reasonable and effective. Importantly, as of the date of this filing, the address that Plaintiff sent the first and second letters to is still the address that Defendant currently designates as the proper address for consumer consent revocations. *See* www.nyandcompany.com/static/terms-conditions/ (last visited September 28, 2023).

Plaintiff alleges that Defendant violated 47 C.F.R. §64.1200(c)(2) by sending twenty-five (25) unwanted promotional text messages to Plaintiff's cellular telephone number after Plaintiff initially requested that the promotional text messages cease in writing in May 2022 and while Plaintiff's cellular telephone number was registered on the National Do Not Call Registry. *See* Exhibit B, Declaration of Ruhi Reimer, ¶9, ¶¶12-21.

"47 U.S.C. § 227(c)(5) provides a private right of action to any person who receives more than one telephone call that violates regulations promulgated under the TCPA from the same entity

within a twelve-month period." *Barton v. JMS Assoc. Mktg., LLC,* 2023 U.S. App. LEXIS 3593, at *3 (9th Cir. 2023). "47 C.F.R. § 64.1200(c)(2) provides that '[n]o person or entity shall initiate any telephone solicitation to: . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Id.* The FCC has expressly rejected interpreting "residential subscribers" narrowly to exclude cellular telephone numbers categorically. *Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14038. Courts have repeatedly acknowledged and deferred to the FCC's binding rulemaking authority and found that the DNC provision applies equally to wireless phone numbers per the FCC's directive. *Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1342 (S.D. Fla. 2022) *citing* 47 C.F.R.§§64.1200(c), (e) (finding that the "Court must enforce the rules and regulations set forth by the FCC" and that the DNC provision "prohibits unsolicited telephone advertisements to residential *and* cellular telephone numbers that have been registered on the DNC Registry"); *Correll v. Iconic Mortg. Corp.,* 2021 U.S. Dist. LEXIS 216703, at *14-15 (S.D. Fla. 2021) (deferring to the FCC's binding authority and rejecting defendant's argument that the DNC provision does not apply to calls made to wireless telephone numbers); *Sasin v. Enter. Fin. Group,* 2017 U.S. Dist. LEXIS 229459, at *17-18 (C.D. Cal. 2017) (finding that FCC orders are binding on courts and rejecting defendant's argument that the DNC provision does not apply to calls made to wireless telephone numbers); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 U.S. Dist. LEXIS 177166, at *30-31 (N.D. Cal. 2013) (finding that the DNC provision also applies to wireless telephone numbers). Here, Plaintiff utilizes his cellular telephone number for residential purposes as his cellular telephone number is the primary means of reaching Plaintiff at his residence. *See* Exhibit B, ¶6. Accordingly, Plaintiff is a "residential telephone subscriber."

The plain language of 47 C.F.R. §64.1200(c)(2) demonstrates that the DNC provision prohibits "telephone solicitations." Specifically, the TCPA defines "telephone solicitation" as the "initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services…" 47 U.S.C. §227(a)(4) (emphasis added); *see also* 47 C.F.R. §64.1200(f)(14). As demonstrated by the plain language of the TCPA, "telephone solicitations" include *messages*. Accordingly, the plain language of the DNC provision plainly demonstrates that it extends to text messages. *See Gulden v. Liberty Home Guard LLC,* 2021 U.S. Dist. LEXIS 33833, at *11 (D. Ariz. 2021) (finding that the DNC provision extends to text messages because "telephone solicitations" include text messages); *Vallianos v. Schultz,* 2019 U.S. Dist. LEXIS 174729, at *7 (W.D. Wash. 2019) (recognizing that text messages are "telephone solicitations" for purposes of the DNC provision). Here, there could be no question that Defendant's solicitation text *messages* are "telephone solicitations" as defined by the DNC provision as they were messages that were initiated by Defendant and sent to Plaintiff's cellular telephone for the purposes of encouraging the purchase of goods. *See* Exhibit B-4

The TCPA creates a private right of action for individuals who receive illegal telemarketing calls for at least $500 in damages per violation. 47 U.S.C. §227(c)(5). Here, Plaintiff received twenty-five (25) violating calls from Defendant and is therefore entitled to $12,500 in statutory damages (25 calls x $500) with respect to his 47 C.F.R. §64.1200(c)(2) claim.

      **b.**      **Plaintiff is Entitled to $1,500 in Statutory Damages for Defendant's Violations of 47 CFR 64.1200(e)(2)(i)**

Pursuant to 47 CFR 64.1200(e)(2)(i), Defendant is required to have a written policy, *available upon demand*, for maintaining a do-not-call policy. 47 C.F.R. 64.1200(e)(2)(i). Here,

6

Defendant violated 47 CFR 64.1200(e)(2)(i) by failing to deliver its written Do-Not-Call policy to Plaintiff despite Plaintiff's multiple demands. Specifically, Plaintiff demanded Defendant's Do-Not-Call policy *in writing* on three separate occasions. *See* Exhibit B, ¶¶12-13; ¶¶16-17; ¶¶19-20. There is a private right of action for violations of 47 CFR 64.1200(e)(2)(i). *Adamo v. AT&T,* No. 79002, 2001 Ohio App. LEXIS 4989 (Ohio Ct. App. 2001) *citing* 47 U.S.C. 227(c)(5)(A)&(B) (holding that there is a private right of action for violations of 47 CFR 64.1200(e)(2)(i)). Here, Defendant failed to provide Plaintiff with its Do-Not-Call Policy on three separate occasions. *See* Exhibit B, ¶24. Accordingly, Plaintiff is entitled to $1,500 in statutory damages ($500 x 3 violations) for Defendant's violations of 47 CFR 64.1200(e)(2)(i).

  **IV.**   **Plaintiff is Entitled to a Default Judgment on his VTPPA Claims**

Plaintiff alleges that each of Defendant's (25) solicitation text messages violated four separate sections of the VTPPA.

  **a.**   **Plaintiff is Entitled to $116,500 in Statutory Damages for Violations of §59.1-514(A) of the VTPPA.**

Pursuant to §59.1-514(A) of the VTPPA, "no telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number when a person at such telephone number previously has stated that he does not wish to receive a telephone solicitation call made by or on behalf of the person on whose behalf the telephone solicitation call is being made." Va. Code §59.1-514(A). The VTPPA defines a "telephone solicitation call" as follows:

> "Telephone solicitation call" means (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, **to any landline or wireless telephone with a Virginia area code**, or to a landline or wireless telephone registered to any natural person **who is a resident of the Commonwealth** or (ii) **any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth**, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the

7

> purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone. Va. Code §59.1-510. (emphasis added)

Here, Plaintiff's area code (703) is a Virginia area code and Plaintiff was a resident of Virginia during the relevant time period. *See* Exhibit B, ¶¶3-5. Moreover, there could be no question that Defendant's solicitation text messages are covered by the VTPPA as they were messages that were initiated by Defendant and sent to Plaintiff's cellular telephone for the purposes of offering or advertising property and/or goods. *See* Exhibit B-4. Here, Defendant violated §59.1-514(A) of the VTPPA by sending twenty-five (25) solicitation text messages to Plaintiff's cellular phone number after Plaintiff initially requested that Defendant cease all telephonic communications with him in May 2022. *See* Exhibit B, ¶¶12-13; ¶¶16-17; ¶¶19-20.

Pursuant to §59.1-515 of the VTTPA, "[a]ny natural person who is aggrieved by a violation of this chapter shall be entitled to initiate an action against any responsible person to enjoin such violation and to recover from any responsible person damages in the amount of **$500 for a first violation, $1,000 for a second violation, and $5,000 for** *each subsequent violation*. Va. Code §59.1-515. Here, Defendant violated §59.1-514(A) of the VTPPA on 25 separate occasions (1 violation for each solicitation text message). Accordingly, Plaintiff is entitled to a total of $116,500 in statutory damages ($500 for the first violation, $1,000 for the second violation, and $5,000 per violation for violations 3 through 25) for Defendant's violations of §59.1-514(A) of the VTPPA.

        **b.**        **Plaintiff is Entitled to $116,500 in Statutory Violations for Violations of §59.1-514(B) of the VTPPA.**

Pursuant to §59.1-514(B) of the VTPPA, "no telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry…" Va. Code §59.1-514(B). Defendant violated §59.1-514(B) of the VTPPA by sending twenty-five (25) promotional text messages to Plaintiff's cellular phone number while Plaintiff's

cellular phone number was registered on the National Do-Not-Call Registry and after Plaintiff revoked consent. *See* Exhibit B, ¶9, ¶21.

Here, Defendant violated §59.1-514(B) of the VTPPA on twenty-five (25) separate occasions (1 violation for each telephone solicitation text message). Accordingly, Plaintiff is entitled to a total of $116,500 in statutory damages ($500 for the first violation, $1,000 for the second violation, and $5,000 per violation for violations 3 through 25) for Defendant's violations of §59.1-514(B) of the VTPPA.

      c.    **Plaintiff is Entitled to $116,500 in Statutory Damages for Violations of §59.1-513(A) of the VTPPA.**

Pursuant to §59.1-513(A) of the VTPPA, "[a] telephone solicitor who makes a telephone solicitation call shall transmit the telephone number, and, when available by the telephone solicitor's carrier, the name of the telephone solicitor. The number so provided must permit, during regular business hours, any individual to make a request not to receive telephone solicitation calls." Va. Code §59.1-514(B). Defendant violated §59.1-513(A) of the VTPPA by not providing in its promotional text messages a telephone number that would permit Plaintiff to make a request not to receive telephone solicitation calls. *See* Exhibit B, ¶22; Exhibit B-4. Here, Defendant violated §59.1-513(A) of the VTPPA on twenty-five (25) separate occasions (1 violation for each telephone solicitation text message). Accordingly, Plaintiff is entitled to a total of $116,500 in statutory damages ($500 for the first violation, $1,000 for the second violation, and $5,000 per violation for violations 3 through 25) for Defendant's violations of §59.1-513(A) of the VTPPA.

      d.    **Plaintiff is Entitled to $116,500 in Statutory Damages for Violations of §59.1-512 of the VTPPA.**

Pursuant to §59.1-512 of the VTPPA, "[a] telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on

whose behalf the telephone solicitation call is being made promptly upon making contact with the called person." Defendant violated §59.1-512 of the VTPPA by failing to identify the first and last name of the individual(s) that sent the promotional text messages to Plaintiff. Here, Defendant violated §59.1-512 of the VTPPA on twenty-five (25) separate occasions (1 violation for each telephone solicitation call). Accordingly, Plaintiff is entitled to a total of $116,500 in statutory damages ($500 for the first violation, $1,000 for the second violation, and $5,000 per violation for violations 3 through 25) for Defendant's violations of §59.1-512 of the VTPPA.

### V. Plaintiff's Attorney's Fees and Costs

Although §59.1-515 of the VTPPA grants the Court discretion to award attorney's fees and costs to a prevailing Plaintiff, Plaintiff is not seeking his attorney's fees and costs in light of the value of his statutory damages.

### CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter a default judgment against Defendant in the amount of **$480,000**, which can be itemized as follows:

| Claim | Statutory Damages |
|---|---|
| Violations of 47 CFR 64.1200(c)(2) | $12,500 |
| Violations of 47 CFR 64.1200(e)(2)(i) | $1,500 |
| Violations of §59.1-514(A) of the VTPPA | $116,500 |
| Violations of §59.1-514(B) of the VTPPA | $116,500 |
| Violations of §59.1-513(A) of the VTPPA | $116,500 |
| Violations of §59.1-512 of the VTPPA | $116,500 |
|  | **Total** |
|  | **$480,000** |

Dated: September 28, 2023                              Respectfully Submitted,


/s/ *William P. Robinson III*
William P. Robinson III
Robinson Law
1934 Old Gallows Road
Suite 350K
Vienna, VA 22182
(708) 789-4800
william@robinsonlaw.com

/s/ *Mohammed O. Badwan*
Mohammed O. Badwan (PHV)
Sulaiman Law Group, Ltd.
2500 S. Highland Ave.
Suite 2500
(630) 575-8180
mbadwan@sulaimanlaw.com